IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Law Offices of Bruce J. Chasan, LLC<br>1500 JFK Boulevard, Suite 312<br>Philadelphia, PA 19102<br><br>Bruce J. Chasan, Esq.<br>1500 JFK Boulevard, Suite 312<br>Philadelphia, PA 19102<br><br>　　　　　　Plaintiffs<br><br>　　　　vs.<br><br>Pierce Bainbridge Beck Price &<br>　　Hecht, LLP<br>600 Wilshire Boulevard, Suite 500<br>Los Angeles, CA 90017<br><br>John M. Pierce, Esq.<br>c/o Pierce Bainbridge Trial Lawyers<br>600 Wilshire Boulevard, Suite 500<br>Los Angeles, CA 90017<br><br>　　　　　　Defendants | Civil Action No. 2018-cv-_____ |

**COMPLAINT**

1.　Nature of Action: This action is brought in federal court based on diversity of citizenship and an amount in controversy greater than $75,000.00, exclusive of interest and costs. Plaintiffs seek specific performance of a settlement that was intended to avoid litigation regarding the Plaintiffs' claims for attorney's fees from Defendants stemming from Plaintiffs' representation of Lenwood Hamilton in the case of *Lenwood Hamilton, a/k/a Hard Rock or Skip Hamilton v. Lester Speight, Epic Games,*

1

*Inc., Microsoft, Inc., Microsoft Studios, and The Coalition, a division or subsidiary of Microsoft, Inc.*, No. 17-cv-0169-AB. Alternatively, this is an action for breach of contract to settle and pay a sum of $160,000.00.

## PARTIES

2. Law Offices of Bruce J. Chasan, LLC ("BJC Law") is a Pennsylvania limited liability company organized in 2012. BJC Law has offices at 1500 JFK Boulevard, Suite 312, Philadelphia, PA 19102.

3. Bruce J. Chasan, Esq. ("Chasan") is an attorney at law licensed in Pennsylvania since 1979, and a resident of Pennsylvania. Chasan was first admitted to the bar in Massachusetts in 1972. Chasan is the sole member of BJC Law and has offices at 1500 JFK Boulevard, Suite 312, Philadelphia, PA 19102.

4. Pierce Bainbridge Beck Price & Hecht, LLP ("PBBPH Law") is a California limited liability partnership, formed in 2018. PBBPH Law has its main offices at 600 Wilshire Boulevard, Suite 500, Los Angeles, CA 90017.

5. John M. Pierce, Esq. ("Pierce") is the managing partner of PBBPH Law and has offices at 600 Wilshire Boulevard, Suite 500, Los Angeles, CA 90017. Pierce is a resident of California.

## FACTUAL BACKGROUND

6. On or about Dec. 31, 2016, Lenwood Hamilton engaged the Law Offices of Bruce J. Chasan, LLC to represent him in a civil action pertaining to Hamilton's right of publicity and related claims against Epic Games, Inc.,

Lester Speight, and Microsoft Corporation (named as "Microsoft, Inc." in the later-filed Complaint), including certain divisions and subsidiaries of Microsoft Corporation, regarding the alleged use of Hamilton's likeness and voice in the Gears of War videogame series, and on that date Hamilton signed an Engagement Letter provided by BJC Law.

7. The Engagement Letter signed by Hamilton on or about Dec. 31, 2016 provided numerous terms including, *inter alia*, that the representation would be handled as a contingent fee matter, but if Hamilton terminated the representation, he would be liable for hourly attorney's fees on a *quantum meruit* basis at a $450 hourly rate. The Engagement Letter also provided that Hamilton was responsible to pay and fund all costs and expenses of the litigation.

8. On January 11, 2017, Attorney Chasan, and BJC Law filed a civil action complaint in the U.S. District Court for the Eastern District of Pennsylvania, *Lenwood Hamilton v. Lester Speight, et al.*, No. 2017-cv-0169-AB, to assert Hamilton's right of publicity claims.

9. Attorney Chasan filed an Amended Complaint for Hamilton on or about Feb. 14, 2017, and a Second Amended Complaint on or about April 14, 2017.

10. Attorney Chasan responded to motions to dismiss the Amended Complaint and the Second Amended Complaint, and on December 18, 2017, the court denied the motion to dismiss the Second Amended Complaint.

11. Attorney Chasan framed and served discovery to defendants Speight, Epic Games and Microsoft.

12. Attorney Chasan worked cooperatively with counsel for Speight, Epic Games and Microsoft to craft a suitable stipulated Confidentiality Order for submission to the court for approval and entry on the docket.

13. Attorney Chasan worked with Hamilton to craft objections and responses to discovery requests served to Hamilton by Speight, Epic Games and Microsoft.

14. Hamilton lacked resources to finance the litigation of his case or pay Chasan's customary hourly rate.  Indeed, notwithstanding his agreement to fund the litigation, as stated in the Engagement Letter with BJC Law, Hamilton was and is impecunious vis-à-vis financing any federal court litigation, let alone his "right of publicity" case against the likes of Epic Games and Microsoft.

15. Hamilton had provided Chasan and BJC Law with a rather *de minimis* amount to file the complaint and handle initial litigation expenses, but this sum was soon exhausted and he had no funds to pay for depositions or expert witnesses.

16. Attorney Chasan solicited numerous third-party litigation funding companies on behalf of Hamilton to secure funding for the presentation of Hamilton's case.

17. In about mid-March 2018, Attorney Chasan was introduced to Attorney Pierce as someone who might be able to co-counsel with Chasan and bring financing to pay the expenses of Hamilton's case. Chasan and Pierce were complete strangers before this introduction.

18. Chasan proposed to Pierce that if Pierce could provide funding for Hamilton's right of publicity case, and assist in the litigation, he [Chasan] would split any recovery of a contingent fee with Pierce's law firm on a 50-50 basis.

19. Chasan arranged for Hamilton to meet with Pierce and himself on March 20, 2018 at the premises of BJC Law in in Philadelphia, PA to discuss joint representation and financing the litigation.

20. Hamilton had had no prior contact with Pierce before the March 20, 2018 meeting at the premises of BJC Law. Pierce and Hamilton were also strangers to one another.

21. On or about March 27, 2018, Hamilton terminated the representation of Chasan and BJC Law and retained Pierce and Pierce's law firm, PBBPH Law.

22. Hamilton terminated Chasan without payment of any accrued hourly fees based on *quantum meruit*, and he had no resources to pay anything.

23. On or about March 28, 2018, Chasan brought to Pierce's attention via email that Hamilton was liable to BJC Law for attorney's fees,

5

which amounted to approximately $320,000 based on hourly billing, and Chasan requested payment from PBBPH Law.

24. On April 27, 2018, Chasan informed Pierce via email that because neither Hamilton nor anyone else had paid Hamilton's accrued legal fees to BJC Law, Chasan and BJC Law would seek recourse by filing a lawsuit against Pierce and PBBPH Law (but not Hamilton).

25. On April 30, 2018, Pierce sent Chasan an email with a sledgehammer threat, stating: "This e-mail is to advise you that Skip Hamilton has now authorized Pierce Bainbridge to file, on his behalf, a multi-million dollar, eight-figure legal malpractice action against you. Before any lawsuits are filed on either side, I am reaching out to you in an effort to calmly, amicably, and in good faith attempt to work this out. If we are unable to do so, you can expect that Pierce Bainbridge will file Skip Hamilton's malpractice complaint against you, and we anticipate representing him throughout the case."

26. On May 1, 2018, via a detailed email, Pierce initiated settlement negotiations with Chasan to resolve the dispute over payment of attorney's fees, and Pierce proposed terms that he urged be accepted, and the disputants thereafter could provide mutual releases. Chasan responded via email that same day stating he would hold off filing a complaint in order to consider Pierce's proposal.

27. In view of Pierce's settlement overture, Chasan and BJC Law refrained from filing suit and engaged with Pierce over a period of more than four months in exchanging settlement proposals, which extended to September 15, 2018. All such settlement communications were conducted via email, often with attached memos and letters.

28. On at least three occasions between May 1, 2018 and September 15, 2018, Pierce repeated his threat the bring a malpractice action against Chasan on Hamilton's behalf, and in a letter to Chasan dated July 25, 2018, he stated: "We are hereby advising you, separate and apart from any settlement discussions, that prior to your filing any complaint against our law firm, you owe a duty to inform your malpractice carrier that . . . our law firm has communicated to you that it will be filing cross-complaint(s) against you and your law firm on behalf of our law firm and/or on behalf of our client [Hamilton], whereby we will be making eight-figure damage requests."

29. On September 15, 2018, Chasan and BJC Law reached agreement on settlement terms with PBBPH Law, as explained in the next two paragraphs.

30. On September 10, 2018, Pierce, via email, communicated to Chasan two "final offers" as follows, both conditioned upon getting Lenwood "Skip" Hamilton's approval:

> My first offer is the full $160,000 — the same amount that you were willing to accept from a $400,000 [hypothetical] settlement in March of this year [of Hamilton's right of publicity case]. There would be no further payment to you of any kind for any reason

7

from our law firm or from Skip, regardless of the outcome of the case.

My second offer is $110,000 upfront with no 4% contingency fee, but with the balance of the $319,000 paid to you exclusively from the first net proceeds recovered from all defendants [in Hamilton's right of publicity case], whereby "net proceeds" means gross recovery minus all of our law firm's costs and expenses (but not including legal fees incurred by our law firm's attorneys) in prosecuting the case.

The bracketed text statements in the above quotation have been inserted to give context to Pierce's two offers.

31. On September 15, 2018, Chasan replied to Pierce's 9/10/2018 email, stating as follows:

We have a settlement. I am accepting your first offer listed below, i.e. the full $160,000 with no further payment by you or your law firm or by Skip Hamilton, regardless of the outcome of the case.

We should be able to accomplish this speedily. The Mutual Release is simple in concept: In consideration of payment of $160,000, Law Offices of Bruce J. Chasan, LLC and Bruce J. Chasan release all claims against John Pierce, the Pierce Bainbridge law firm, and Lenwood Hamilton. Also, you and Pierce Bainbridge and Lenwood Hamilton release all claims against Law Offices of Bruce J. Chasan, LLC and Bruce J. Chasan, Esq.

Skip should readily accept this, as it reduces his *quantum meruit* liability by at least half.

Do you want to draft the mutual releases? I believe this would be a relatively short document, just a couple of pages. No claims are reserved. I expect we can get it done within a week, and payment can be made promptly. Please advise.

Good luck with the case.

32. Pierce replied on 9/15/2018 to Chasan's 9/15/2018 email, and copied his partners Jim Bainbridge and Carolynn Beck, stating:

> Thanks Bruce. I am swamped with travel next 10 days or so. Carolynn/Jim, please work with Bruce to wrap this up swiftly.

33. Chasan did not hear from Bainbridge or Beck right away, so on 9/20/2018, he drafted a document entitled "Settlement Agreement and Mutual Release" (a true copy of which is attached as **Exh. A**), and emailed it to Pierce, Bainbridge and Beck.

34. The draft "Settlement Agreement and Mutual Release" document (**Exh. A**) included standard terms typically found in nearly all settlement agreements, including, *inter alia*: no admission of liability; non-disparagement; signatures acceptable in counterparts; no modification unless in writing by all parties; all parties had advice of counsel; severability of any invalid or unenforceable term; an integration clause; and a statement that the signatories intend to be legally bound. These standard terms have never been in dispute.

35. Later, on 9/20/2018, Bainbridge, after a brief review, emailed Chasan (with copies to Pierce and Beck), with the following initial comments:

> In general it looks good, but there are a few points of clarification that will be needed. For example, on page 4, paragraph 1, I suggest that it read something like the following to provide the normal protections that are afforded in a settlement agreement that contains mutual releases:
>
> 1.  **Payment.** Lenwood Hamilton and Pierce Bainbridge Beck Price & Hecht, LLP, or either of them, singly or in combination, shall pay The Law Offices of Bruce J. Chasan, LLC

9

the sum of One Hundred Sixty Thousand Dollars ($160,000.00) in full satisfaction of any and all claims of any nature against Lenwood Hamilton, Pierce Bainbridge Beck Price & Hecht, LLP and any of its employees, attorneys, Associates, Co-Counsel, Partners, including its Managing Partner, John M. Pierce, and any of its accountants, bookkeepers or independent contractors, that could be asserted by The Law Offices of Bruce J. Chasan, LLC and Bruce J. Chasan, Esq. against any of them, whether or not any such claims arise out of Attorney Chasan's representation of Hamilton in the case of *Lenwood Hamilton v. Lester Speight, et al.*, Case Number 2017-cv-0169-AB filed in the U.S. District Court for the Eastern District of Pennsylvania.

36. On 9/22/2018, Chasan emailed a message to Messrs. Bainbridge and Pierce and Ms. Beck stating that he was "okay" with Bainbridge's modification of paragraph 1 (**Payment**).

37. Thereafter, more than three weeks passed without any further comments on the draft Settlement Agreement and Mutual Release from Bainbridge, Pierce or Beck.

38. On 10/17/2018, Chasan sent an email to Pierce, Bainbridge and Beck, stating:

> I have taken the liberty of revising the Settlement Agreement and Mutual Release by substituting the paragraph 1 that Jim drafted on September 20 for the original text I had for paragraph 1. So here is the revision. The only change is the substitution of paragraph 1 with Jim's text.
>
> Not having heard anything else, I assume that you, Jim and Carolynn have no more changes. Hence, also attached is a PDF of the Settlement Agreement and Mutual Release which I have signed today for myself and for my LLC before a notary.
>
> The only thing left is for you to sign for yourself and the firm, and for Skip to sign, get it notarized, and make payment of the funds within 14 days from today, i.e., by October 31, 2018.

10

A true copy of the revised draft Settlement Agreement and Mutual Release that Chasan signed on 10/17/2018, and sent to Pierce, Bainbridge and Beck, is attached as **Exh. B**.

39. On 10/30/2018, Bainbridge sent Chasan an email stating: "I am attaching a draft of the final copy of the Settlement Agreement that John [Pierce] has given the green light on for execution by Skip, him and you. If you have any changes on this, it will require going back to John and Skip." The unsigned Settlement Agreement forwarded by Bainbridge is attached as **Exh. C**.

40. Chasan sent a reply email to Bainbridge on 10/30/2018 stating that the unsigned Settlement Agreement that Bainbridge had sent (**Exh. C**) included material modifications that Chasan could not accept. In particular, it was no longer a "mutual release" because, as written by PBBPH LAW (especially the Title and paragraph 4), Chasan and BJC Law were releasing Pierce, PBBPH Law, and Hamilton, and Pierce and PBBPH Law were releasing Chasan and BJC Law, but Hamilton was not releasing Chasan or BJC Law.

41. Based on previous email exchanges, it was understood that Hamilton believes he has potential claims against Chasan and BJC Law for professional malpractice and/or breach of fiduciary duty. Evidently, Hamilton was not willing to release his potential malpractice claims. Chasan had not expected that Hamilton would balk at signing a release.

42. By virtue of the unsigned Settlement Agreement (**Exh. C**) that Bainbridge sent to Chasan on 10/30/2018, PBBPH Law was signaling its view that a mutual release executed by Hamilton was not essential or material to the proposed settlement.

43. Chasan believes that any claim against him by Hamilton for professional malpractice would be unfounded and meritless, and he had so advised Bainbridge, Pierce and PBBPH Law prior to 10/30/2018.

44. Chasan's 10/30/2018 email to Bainbridge also stated that changes to paragraph 5 (non-disparagement) and paragraph 7 (warranties) in the proposed revised Settlement Agreement (**Exh. C**) had removed Hamilton from the non-disparagement and warranties obligations, and these modifications also were not acceptable.

45. Chasan's 10/30/2018 email to Bainbridge also objected to the modification to paragraph 14 of the proposed revised Settlement Agreement (**Exh. C**) pertaining to Governing Law, Jurisdiction and Venue, because, as revised, it would require Chasan and BJC Law to sue in California to enforce the settlement in the event of non-payment of the $160,000.00 consideration.

46. On 10/30/2018, Bainbridge emailed a reply to Chasan's 10/30/2018 email stating, *inter alia*, that (1) PBBPH Law could make provision for Chasan and BJC Law to sue in Pennsylvania if the $160,000.00 consideration was not paid; (2) he would endeavor to modify the terms

regarding non-disparagement and warranties to be more acceptable to Chasan and BJC Law; and (3) despite Hamilton's unwillingness to release malpractice claims against Chasan and BJC Law, "I am attempting to move this along so that we do not get hung up on what you claim is a 'nonsensical' contingency [*i.e.*, Hamilton's threatened malpractice case]."

47. Between 10/30/2018 and 11/16/2018, Chasan and Bainbridge had numerous email exchanges and suggestions attempting to bridge the gap regarding Hamilton's unwillingness to sign a release of any malpractice claims he might have against Chasan and BJC Law.

48. On 11/8/2018, Bainbridge emailed to Chasan a proposed revised "Settlement Agreement and Mutual Releases" document which included, *inter alia*, changes to paragraph 14 to permit Chasan and BJC law to sue in Philadelphia if the $160,000.00 consideration was not paid as promised. Pertinent text from pp. 7-8 of this proposed revised draft agreement, including paragraph 14, are excerpted and attached as **Exh. D**. In other respects, this revised draft was still in flux in that it was uncertain whether changes pertaining to a release by Hamilton could or would be finalized.

49. On 11/15/2018, Pierce emailed Chasan advising that Hamilton would not sign a mutual release, so it appeared the settlement had fallen through. His email stated that Jim [Bainbridge] would provide more detail.

50. Later, also on 11/15/2018, Bainbridge sent Chasan an email with a detailed explanation of Hamilton's claim for alleged breach of fiduciary

13

duty on Chasan's part. This was the first explanation by PBBPH Law of the basis for the "breach of fiduciary duty" allegation.

51. On 11/16/2018, Chasan sent Bainbridge a memo and a mark-up of the Settlement Agreement that Bainbridge had sent on 10/30/2018 (**Exh. C**). This mark-up is attached as **Exh. E**. In this proposed revised Settlement Agreement (**Exh. E**), Chasan and BJC Law acceded to Hamilton's insistence on not signing a release, and simply dealt with it by removing Hamilton as a signatory to the Settlement Agreement. As such, Hamilton would still receive a release from Chasan and BJC Law, as a third-party beneficiary, without having to give a release of his own, and Chasan and BJC Law would take the risk of any malpractice (or breach of fiduciary duty) case that Hamilton might later assert against them.

52. As explained in the memo that Chasan sent Bainbridge on 11/16/2018, Hamilton was not an essential or necessary party to the proposed Settlement Agreement (**Exh. E**), as he was not surrendering any rights:

> For reasons which I will elaborate on below, I am proposing a modification of the "Settlement Agreement" you sent me on October 30, 2018, with material inserted from the proposed agreement that you sent on November 8, 2018. See attached PDF of your October 30 draft with my handwritten notations [excerpted in **Exh. E**]. Here are the essential particulars:
>
> 1. In exchange for the $160,000 payment, I release Skip and the Pierce Bainbridge Parties. (Since the only claim I have against Skip is for payment of legal fees, he is released

14

> from any and all claims for fees above the $160,000, which
> PBBPH Law would pay.)
>
>     2.    Pierce Bainbridge Parties release the Chasan Parties as you proposed.
>
>     3.    Skip does not release anything or anyone. (He retains the theoretical right to sue me for malpractice. I consider any such claims meritless and frivolous.)
>
>     4.    Skip is not a party to the Settlement Agreement. (He doesn't have to be; he's not a party in my contemplated lawsuit. But he is a third-party beneficiary of the release that I would give.)
>
>     5.    The provision on Jurisdiction and Venue incorporates the term that the Chasan Parties can sue the Pierce Bainbridge Parties in PA if the $160,000 is not paid as promised, as you proposed in your November 8, 2018 draft.
>
> I have concluded that the possibility of a malpractice case against me brought by Skip is extremely remote..........
>
> [T]he revised settlement proposal I am making today. . . . would resolve our dispute entirely without prejudicing Skip in any way, shape or form. He gets a clear benefit. He does not need to be a signatory. He does not give up any rights or claims.

53. Chasan also explained in detail in the 11/16/2018 memo to Bainbridge that he was not impressed with the allegation of "breach of fiduciary duty," and considered it baseless.

54. Pierce and PBBPH Law have not accepted the proposed amended Settlement Agreement that Chasan sent on 11/16/2018, despite that it is a non-material revision of what Attorney Bainbridge had previously drafted on behalf of PBBPH Law.

## JURISDICTION AND VENUE

55. Jurisdiction is based on 28 U.S.C. § 1332(a)(1) because all of the Plaintiffs are Pennsylvania citizens, and none of the Defendants are Pennsylvania citizens or residents, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

56. The Court has personal jurisdiction over PBBPH Law and Pierce because they have voluntarily come to the Eastern District of Pennsylvania to litigate Hamilton's "right of publicity" case pending in this District, No. 17-cv-0169-AB.

57. Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§1391(b)(2) and (c)(2) because, among other things, the contract between BJC Law and Lenwood Hamilton was made in Philadelphia, Pennsylvania; Hamilton's "right of publicity" lawsuit is pending in the Eastern District of Pennsylvania, No. 2017-cv-0169-AB; Plaintiffs BJC Law and Chasan maintain their principal place of business in this District; and Plaintiff Chasan and Defendant Pierce had two meetings at the offices of BJC Law in Philadelphia in March 2018, including one in which Hamilton was present.

## COUNT I - SPECIFIC PERFORMANCE

58. All foregoing averments of this Complaint are incorporated herein by reference and realleged as if fully set forth herein.

59. The essential elements of the agreement between PBBPH Law and Pierce on the one hand, and Chasan and BJC Law on the other, are

contained in the proposed, revised Settlement Agreement sent by Chasan to Bainbridge on 11/16/2018 (**Exh. E**), namely:  (1) PBBPH Law pays BJC Law $160,000.00 as expressly proposed by Pierce in his 9/10/2018 email; (2) BJC Law and Chasan are not entitled to any additional payments regardless of the outcome of Hamilton's "right of publicity" case; (c) Chasan and BJC Law, and Pierce and PBBPH Law, mutually release one another; and (d) Hamilton is released of all further claims by Chasan and BJC Law, *i.e.*, Hamilton is a third-party beneficiary of the Settlement Agreement.

60.   Hamilton does not provide any release at all.  This was first proposed by Bainbridge and PBBPH Law on 10/30/2018, as it is clear that PBBPH Law then believed and acted to effectuate the settlement without any release by Hamilton.   Chasan and BJC Law acceded to this proposal on 11/16/2018.

61.   Since Hamilton is not a party to the contemplated lawsuit being settled and released, it is not essential or necessary that he be a signatory to the Settlement Agreement, especially since he is not surrendering any rights or claims.

62.   Pierce and PBBPH Law should not be permitted to rely on Hamilton's refusal to sign a release as a basis for avoiding the settlement they proposed.  Such conduct by Pierce and PBBPH Law amounts to bad faith, as it is nothing more than a pretext or whim for avoiding the

settlement they proposed (by relying on an immaterial condition, *i.e.*, that Hamilton must approve the settlement).

## COUNT II – BREACH OF CONTRACT

63. All foregoing averments of this Complaint are incorporated herein by reference and realleged as if fully set forth herein.

64. Pierce and PBBPH Law on the one hand, and Chasan and BJC Law on the other, reached agreement on 9/15/2018 to settle the dispute and spare themselves litigation over attorney's fees that Chasan and BJC Law claim entitlement to for their representation of Hamilton in his "right of publicity" case, and would pursue via litigation absent a settlement.

65. Pierce and PBBPH Law themselves proposed on 10/30/2018 that Hamilton did not have to sign a release of Chasan and BJC Law, but otherwise the settlement was fully operational. Chasan and BJC Law accepted this modification on 11/16/2018.

66. Since Hamilton does not have to sign a release, he does not need to be a signatory to the Settlement Agreement at all.

67. Hamilton is nonetheless a third-party beneficiary of the written Settlement Agreement memorialized by Chasan and BJC Law on 11/16/2018.

68. Without justification, Pierce and PBBPH Law refuse to proceed with the Settlement Agreement draft sent by Chasan on 11/16/2018, and they are thus in breach of the settlement they themselves proposed by not

<mark>Case 2:18-cv-05399-AB Document 1 Filed 12/14/18 Page 19 of 19</mark>

tendering the $160,000.00, and by not signing the draft Settlement Agreement that is their own draftsmanship (except for the striking of Hamilton's name as a party to the Settlement Agreement, as Hamilton's signature is not essential or material).

WHEREFORE, after an appropriate hearing, Plaintiffs request the Court to enter judgment for Plaintiffs for $160,000.00, finding Pierce and PBBPH Law in breach of the settlement, and to mold the decision to add statutory pre-judgment interest and statutory post-judgment interest, as well as costs and expenses, and any other appropriate relief.

Respectfully submitted,

*Bruce J Chasan*
Bruce J. Chasan, Esq. (Atty I.D. No. 29227)
1500 JFK Boulevard, Suite 312
Philadelphia, PA 19102
215-567-4400
bjchasan@brucechasanlaw.com

*Attorney for Plaintiffs*