# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAW OFFICES OF BRUCE J. CHASAN, LLC, *et al.*,<br>  Plaintiffs,<br><br>v.<br><br>PIERCE BAINBRIDGE BECK PRICE & HECHT, LLP, *et al.*,<br>  Defendants. | CIVIL ACTION<br>2:18-cv-05399-AB |

**May 2, 2019**                                   **Anita B. Brody, J.**

## MEMORANDUM

  Plaintiffs Law Offices of Bruce J. Chasan, LLC and Bruce J. Chasan (collectively "Chasan") sue Defendants Pierce Bainbridge Beck Price & Hecht, LLP ("Pierce Bainbridge") and John Pierce ("Pierce") for specific performance and breach of contract. Defendants move to dismiss Chasan's claims under Rule 12(b)(6). I will grant Defendants' motion.

## I.   BACKGROUND[1]

  In late 2016, Lenwood Hamilton ("Hamilton") engaged the Law Offices of Bruce J. Chasan, LLC, to represent Hamilton in a civil lawsuit against Epic Games, Microsoft, and other defendants. Compl. ¶ 6. Hamilton's lawsuit alleged that Epic and Microsoft had misappropriated Hamilton's likeness and voice in the *Gears of War* video game series. *Id.* Hamilton signed an Engagement Letter that enumerated the terms of Chasan's representation. *Id.* ¶¶ 6-7. The Engagement Letter indicated that the representation would be handled as a contingent fee matter, but if Hamilton terminated the representation, Hamilton would be liable

---

[1] All facts are taken from the Complaint (ECF No. 1).

for hourly attorney's fees at $450 per hour. *Id.* ¶ 7. The Engagement Letter also provided that Hamilton was responsible to pay and fund all costs and expenses of the litigation. *Id.*

From January 2017 through March 2018, Chasan represented Hamilton. *Id.* ¶¶ 8-16. After Hamilton informed Chasan that Hamilton would no longer be able to finance the expenses of the litigation, Chasan contacted Pierce Bainbridge in relation to alternative financing for the case. *Id.* ¶¶ 17-18. On March 20, 2018, Chasan, Hamilton, and Pierce met to discuss joint representation and financing. *Id.* ¶¶ 19-20. About a week later, Hamilton terminated Chasan's representation and retained John Pierce and Pierce Bainbridge. *Id.* ¶ 21. Hamilton did not pay Chasan any of the accrued hourly fees outlined in the Engagement Letter, which Chasan later calculated to be approximately $320,000. *Id.* ¶¶ 22-23.

On April 27, 2018, Chasan informed Pierce by email that because Hamilton's accrued legal fees remained unpaid, Chasan would file a lawsuit against Pierce and Pierce Bainbridge (but not Hamilton). *Id.* ¶ 24. On April 30, 2018, Pierce responded by threatening a malpractice suit against Chasan on behalf of Hamilton. *Id.* ¶ 25. On May 1, 2018, Pierce initiated settlement negotiations with Chasan to resolve their disputes. *Id.* ¶ 26.

On September 10, 2018, after several months of email negotiations, Pierce communicated to Chasan two "final offers as follows, both conditioned upon getting [Hamilton's] approval:"

> My first offer is the full $160,000—the same amount that you were willing to accept from a $400,000 [hypothetical] settlement in March of this year [of Hamilton's right of publicity case.] There would be no further payment to you of any kind for any reason from our law firm or from Skip, regardless of the outcome of the case.
>
> My second offer is $110,000 upfront with no 4% contingency fee, but with the balance of the $319,000 paid to you exclusively from the first net proceeds recovered from all defendants [in Hamilton's right of publicity case], whereby "net proceeds" means gross recovery minus all of our law firm's costs and expenses (but not including legal fees incurred by our law firm's attorneys) in prosecuting the case . . . .

Compl. ¶ 30. On September 15, 2018, Chasan replied to Pierce's email:

2

> We have a settlement. I am accepting your first offer listed below, i.e. the full $160,000 with no further payment by you or your law firm or by Skip Hamilton, regardless of the outcome of the case.
>
> We should be able to accomplish this speedily. The Mutual Release is simple in concept: in consideration of $160,000, Law Offices of Bruce J. Chasan, LLC and Bruce J. Chasan release all claims against John Pierce, the Pierce Bainbridge law firm, and Lenwood Hamilton. Also, you and Pierce Bainbridge and Lenwood Hamilton release all claims against Law Offices of Bruce J. Chasan, LLC and Bruce J. Chasan, Esq.
>
> [Hamilton] should readily accept this, as it reduces his *quantum meruit* liability by at least half.
>
> Do you want to draft the mutual releases? I believe this would be a relatively short document, just a couple of pages. No claims are reserved. I expect we can get it done within a week, and payment can be made promptly. Please advise. Good luck with the case.

Compl. ¶ 31. Pierce then indicated that his firm would attempt to "wrap this up swiftly." *Id.* ¶ 32.

Chasan and attorneys from Pierce Bainbridge then continued to negotiate. *Id.* ¶¶ 33-38. During the course of these additional negotiations, the Parties added various terms to the potential settlement: whether the Parties would admit liability; whether the parties would include a non-disparagement term; the terms of future modifications to the settlement agreement, if any; the inclusion of integration and severability clauses; the timing and format of payment; choice of law and forum; and warranties about the Parties' knowledge of interested third parties. Compl. ¶¶ 34-35, Ex. C. The Parties exchanged numerous unsigned and non-final drafts of a written Settlement Agreement throughout the course of these negotiations. *Id.* On October 30th, 2018, Chasan sent an email to an attorney at Pierce Bainbridge "stating that the unsigned Settlement Agreement that [the Pierce Bainbridge attorney] had sent included material modifications that Chasan could not accept" relating to the scope of the mutual releases and the non-disparagement, warranties, and choice of law and forum terms. *Id.* ¶ 40, 44-46. The Parties continued

3

negotiations about the scope of these terms through November 2018. *Id.* ¶¶ 40-53. By November 8, 2018, the "revised draft was still in flux in that it was uncertain whether changes pertaining to a release by Hamilton could or would be finalized." *Id.* ¶ 48. By November 15, 2018, "it appeared the settlement had fallen through." *Id.* ¶ 49.

Ultimately, Chasan alleges that Pierce and Pierce Bainbridge "have not accepted the proposed amended Settlement Agreement that Chasan sent on 11/16/2018, despite that it is a non-material revision of what [Pierce Bainbridge attorneys] had previously drafted." *Id.* ¶ 54. The Parties never signed a written agreement. *Id.*

## II.  LEGAL STANDARD

In deciding a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

To survive dismissal, a complaint must allege facts sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In order to determine the sufficiency of a complaint under *Twombly* and *Iqbal*, a court must engage in the following analysis:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013) (quoting *Burtch v. Milberg*

*Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011)).

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. However, an exception to the general rule is that a 'document *integral to or explicitly relied* upon in the complaint' may be considered . . . ." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)). Thus, a court may consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## III. DISCUSSION

Chasan has not pleaded the existence of an enforceable contract. Therefore, even accepting all of Chasan's factual allegations as true and construing Chasan's Complaint in the light most favorable to him, there is no reasonable reading of Chasan's Complaint that could support Chasan's entitlement to relief for breach of contract. *See Phillip*s, 515 F.3d at 231. For this reason, I will grant Defendants' Motion to Dismiss.[2]

### A. Pennsylvania Contract Law[3]

In order to state a claim for breach of contract under Pennsylvania law, Chasan must plead "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *Omicron Sys., Inc. v. Weiner*, 860 A.2d 554, 564 (Pa. Super. Ct. 2004) (internal quotation marks and brackets omitted).

---

[2] I do not address the merits of Chasan's claims for tortious interference with contractual relations and unjust enrichment that Chasan mentions in his briefing. *See* Pl.'s Opp. at 4 n.1. If Chasan wishes to pursue those tort claims, he must move for leave to amend his Complaint or file a new lawsuit.

[3] I analyze Chasan's count alleging a claim for "Specific Performance" as a claim for Breach of Contract requesting specific performance as a remedy. *See Cimina v. Bronich*, 537 A.2d 1355, 1357–58 (Pa. 1988).

The essential elements of an enforceable contract are an offer, acceptance, and consideration or a mutual meeting of the minds. *See Yarnall v. Almy*, 703 A.2d 535, 538 (Pa. Super. 1997). "The acceptance of an offer, to be effective, must be unconditional." *Hanisco v. Twp. of Warminster*, 41 A.3d 116, 126 n.15 (Pa. Commw. Ct. 2012) (citing *Jaxtheimer v. Sharpsville Borough*, 85 A. 994, 999 (Pa. 1913)); *see also, e.g.*, *Thomas A. Armbruster, Inc. v. Barron*, 491 A.2d 882, 887 (Pa. Super. 1985) ("It is a basic principle of the law of contracts that an acceptance must be unconditional and absolute."). "An alleged acceptance is not unconditional, and is thus not an acceptance, if it alters the terms of the offer in any material respect." *Armbruster*, 491 A.2d at 887 (citing 1 Corbin, Corbin on Contracts § 82 (1963)).

### B. Application

Chasan argues that his Complaint adequately alleges an enforceable settlement agreement that "was struck in the exchange of emails between Pierce and Chasan on September 10 and 15, 2018, after several months of exchanging proposals." *See* Pl.'s Opp. at 3; *see also* Pl.'s Opp. at 1; Compl. ¶ 29. Chasan argues that all later exchanges were only "later negotiations over the form of the mutual release . . . ." *Id.* at 1. Chasan contends that the "contract was very simple: A $160,000 payment to Plaintiffs by Defendants, with 'no further payment to [Plaintiffs] of any kind for any reason from [Defendants] or [Hamilton] regardless of the outcome" of the underlying case. Pl.'s Opp. at 3. Chasan further argues that, in exchange for the $160,000, the Parties "agreed to forego any further claim or lawsuit," but never concluded negotiations over the terms of the releases. *Id.* at 4. Chasan admits that the Parties never signed or otherwise agreed on a final writing, although numerous written drafts were exchanged. Compl. ¶ 54.

Chasan's Complaint and briefing belie his arguments. Immediately after Chasan and Pierce agreed that Chasan would be paid $160,000, Chasan began to "craft" a mutual release.

6

Pl.'s Opp. at 4. The Parties had not yet agreed to the existence, scope, or specific or general terms of the release, which would have involved multiple claims by and against multiple parties, specifically Chasan, Chasan's law firm, Pierce, Pierce's law firm, and Skip Hamilton. *Id.* Because Chasan added this additional release term to the initial agreement about the monetary term, his September 15th, 2018 email cannot amount to an acceptance under Pennsylvania law because it plainly "alter[ed] the terms of the offer in [a] material respect." *Armbruster*, 491 A.2d at 887; *see also Hedden v. Lupinsky*, 176 A.2d 406, 408 (Pa. 1962) ("[A] reply to an offer, though purporting to accept it, which adds qualifications or requires performance of conditions, is not an acceptance but is a counter-offer.").

More broadly, the Complaint indicates that no contract was formed on September 15, 2018 because the Parties explicitly anticipated that they would still need to "wrap up" the as-yet incomplete deal, Compl. ¶ 32, which the Parties would be able to "accomplish speedily." *See* Compl. ¶ 31. These statements likely contemplated the negotiation of many outstanding terms to be introduced in the next phase of discussions: whether the Parties would admit liability; whether the parties would include a non-disparagement term; the terms of future modifications to the settlement agreement, if any; the inclusion of integration and severability clauses; the timing and format of payment; choice of law and forum; and warranties about the Parties' knowledge of interested third parties. Compl. ¶¶ 34-35, Ex. C. At times during the negotiations, the Parties also disagreed and negotiated about whether to include certain conditions precedent to the agreement, including whether Hamilton would be required to sign off on the deal. *See, e.g.*, Compl. ¶ 51.

But despite extended negotiations on the scope of the release and other terms in the agreement, Chasan's Complaint admits that the Parties never signed or agreed on a final written

7

agreement incorporating these plainly material terms. *Id.* ¶ 54. Because the negotiations never concluded and no agreement was signed, there was no "meeting of the minds" as to the terms of and consideration involved in Chasan's alleged agreement with Defendants. *Yarnall*, 703 A.2d at 538. Therefore, Chasan has not pleaded an enforceable agreement and has not stated a claim for breach of contract.

## IV. CONCLUSION

Because Chasan does not plausibly allege an enforceable agreement, he has not stated a claim for breach of contract. I will therefore grant Defendants' Motion to Dismiss.

s/Anita B. Brody

_____
ANITA B. BRODY, J.

Copies **VIA ECF** on 5/2/2019